## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF THE STATE OF OKLAHOMA

| | | |
|---|---|---|
| 1.   **ADAIRA GARDNER, individually,** | ) | |
| | ) | |
|       **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| 1.   **DANIEL HOLTZCLAW,** | ) | |
| | ) | CIV-16-349-L |
| 2.   **BILL CITTY,** | ) | |
| | ) | |
| 3.   **BRIAN BENNETT,** | ) | |
| | ) | |
| 4.   **ROCKY GREGORY,** | ) | |
| | ) | |
| 5.   **THE CITY OF OKLAHOMA CITY,** | ) | |
|       **OKLAHOMA,** | ) | |
| | ) | |
|       **Defendants.** | ) | |

## COMPLAINT

COMES NOW THE PLAINTIFF Adaira Gardner, by and through her attorneys of record Kirk Olson and Colin R. Barrett of Bass Law, and Jim Dowell of Jim D. Dowell Law, and hereby files her Complaint and for her causes of action herein alleges and states as follows:

## JURISDICTION AND VENUE

1.     Jurisdiction in this matter is based upon the existence of a federal question pursuant to 28 U.S.C. §§ 1331, 1343(a).

2.     All of the acts complained of herein transpired within the geographical limits of the Western District of Oklahoma.

3.     All Defendants herein are residents of the Western District of Oklahoma; therefore, venue is proper before this Court pursuant to 28 U.S.C. § 1391(b).

4.     Plaintiff Adaira Gardner was a citizen and resident of the state of Oklahoma at all times relevant to the claims alleged herein.

5.     Defendant Daniel Holtzclaw (hereinafter "Holtzclaw") was a citizen and resident of Oklahoma City, Oklahoma at all times relevant to the claims alleged herein.

6.     Holtzclaw was a commissioned law enforcement officer employed by the City of Oklahoma City, Oklahoma with authority to act under color of Oklahoma law to make arrests and enforce the laws of the State of Oklahoma at all times relevant to the claims alleged herein.

7.     Defendant Bill Citty (hereinafter "Citty") was a citizen and resident of the City of Oklahoma City, Oklahoma at all times relevant to the claims herein.

8.     Citty was employed as Chief of Police for the City of Oklahoma City, Oklahoma and was the final policy maker for the OKC police department, with authority to hire, train, supervise and discipline officers under his command at all times relevant to the claims alleged herein.

9.     Defendant Brian Bennett (hereinafter "Bennett") was a citizen and resident of Oklahoma City, Oklahoma at all time relevant to the claims alleged herein.

10.     Bennett was employed by the City of Oklahoma City as a police officer with authority to supervise Holtzclaw and otherwise act under color of the laws of the State of Oklahoma at all times relevant to the claims alleged herein.

11.     Defendant Rocky Gregory (hereinafter "Gregory") was a citizen and resident of Oklahoma City, Oklahoma at all times relevant to the claims alleged herein.

12.     Gregory was employed by the City of Oklahoma City to investigate sex crimes and otherwise act under color of the laws of the State of Oklahoma at all times relevant to the claims alleged herein.

13.     Defendant City of Oklahoma City (hereinafter "OKC") is a municipal corporation located within the State of Oklahoma and organized by virtue of the laws, statutes and constitution of the State of Oklahoma and was the employer of Holtzclaw at all times relevant to the claims alleged herein.

## STATEMENT OF FACTS

14.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraph 1 through 13 of Plaintiff's Complaint as if fully set forth herein.

15.     Defendant Holtzclaw was found guilty of multiple counts of rape, sexual battery, lewd acts, and oral sodomy on December 10, 2015 committed against African-American females living in Oklahoma City, Oklahoma.

16.     On January 16, 2016, Holtzclaw was sentenced to two hundred sixty-three (263) years in prison as punishment for these crimes.

17.     Holtzclaw's crimes were committed while he was acting as an Oklahoma City police officer during the course of his over night shifts.

18.     Holtzclaw perpetrated his crimes as a common pattern and practice of sexually assaulting African-American women whom he identified as vulnerable and

3

unlikely to report his sexual abuse due to their economic status and previous involvement with the legal system.

19.     The danger of sexual assault by police officers is well known and has been the subject of papers and studies by associations of municipal police chiefs of which OKC is a member.

20.     Plaintiff is one of at least fourteen (14) women sexually assaulted by Holtzclaw and upon information and belief, at the time of Plaintiff's physical and sexual assault, Defendants Citty, Bennett, Gregory and OKC knew or had reason to know of the crimes being committed by Holtzclaw.

21.     Defendants, acting under color of state law, deprived Plaintiff of her constitutional rights of freedom from unlawful searches and seizures, excessive use of force, her right to privacy and bodily integrity and equal protection under the law.

22.     Defendants should have been monitoring Holtzclaw's conduct and by allowing Holtzclaw to remain as an active police officer wearing the uniform and authority of OKC, despite the public accusations of sexual assault levied against Holtzclaw, all Defendants acted recklessly or with deliberate indifference to the constitutional rights of Plaintiff.

23.     Defendants should have been monitoring and supervising Holtzclaw while acting under color of state law as an Oklahoma City police officer due to the following actions Holtzclaw took while on duty:

    a.  On or about May 1, 2013, Holtzclaw caused the death of Clifton Darnell Armstrong, an African-American resident of Oklahoma City, Oklahoma.

4

Armstrong's death resulted in a tort claim notice on or about July 13, 2013, and a lawsuit filed on or about April 2, 2014, and which were pending at the time Holtzclaw sexually assaulted Plaintiff.

b. On or about November 5, 2013, Demetria Campbell notified Defendants that Holtzclaw illegally detained, arrested and sexually assaulted her while she was in Oklahoma City visiting her daughter. Following the assault, Campbell went to the emergency room at the OU Medical Center.

    i. Defendant Bennett arrived at the OU Medical Center Emergency Room to take a statement from Campbell wherein Campbell detailed the assault, including the name of Holtzclaw.

    ii. Despite Campbell's documented November 5, 2013 complaint, Defendants recklessly or deliberately covered up Holtzclaw's attack and did not investigate or review the numerous data collection systems available to them regarding Holtzclaw while he was on duty, including Holtzclaw's GPS, computer access, contact logs, and dispatch calls. Defendants also did not question Holtzclaw regarding Campbell's complaint.

c. On or about December 20, 2013, Holtzclaw sexually assaulted a female identified as S. H.

d. On or about January 9, 2014 through January 31, 2014, Holtzclaw sexually exposed himself to a female identified as S.H.

e.  On or about February 27, 2014, Holtzclaw sexually assaulted a female identified as T.B.

f.  On or about March 14, 2014, Holtzclaw forced a female identified as Carla Raines to expose herself to him.

g.  On or about March 25, 2014, Holtzclaw broke into the home of a female identified as T.B. and forced her to expose herself to him.

h.  On or about March 26, 2014, Holtzclaw harassed, arrested and assaulted T.B.

i.  On or about April 1, 2014, Holtzclaw sexually assaulted a female identified as R.G.

j.  On or about April 14, 2014, Holtzclaw sexually assaulted a female identified as F.M.

k.  On or about April 24, 2014, Holtzclaw sexually assaulted a female identified as R.G.

l.  On or about April 25, 2014, Holtzclaw sexually assaulted a female identified as R.C.

m. On or about May 7, 2014, Holtzclaw sexually assaulted a female identified as Sherry Ellis.

n.  On May 8, 2014, Holtzclaw illegally detained, arrested, searched, used unlawful force, and physically and sexually assaulted a female identified as Terri Morris.

o. No later than May 8, 2014, the sex crimes division of the Oklahoma City police department opened an investigation into Holtzclaw, but left him as a working police officer without any restrictions, supervision or monitoring.

    i. On or about May 11, Terri Morris reported to Defendant Gregory a sexual assault against her committed by Holtzclaw.

p. On or about May 21, 2014, Holtzclaw sexually assaulted a female identified as S.B.

q. On or about May 26, 2014, Holtzclaw sexually assaulted a female identified as Carla Johnson.

r. On or about June 17, 2014, Holtzclaw illegally searched, seized, detained and sexually assaulted Plaintiff as follows:

    i. On the evening of June 17, 2014 Plaintiff was walking north near the intersection of NW 13th Street and North Kentucky Avenue with two companions, a female identified as Melody Coleman and a male identified as Nathan.

    ii. The female identified as Melody Coleman and the male identified as Nathan were arguing while walking north with Plaintiff.

    iii. Holtzclaw approached Plaintiff and her two companions in his squad car, exited the vehicle, and began questioning Plaintiff and her companions.

    iv. Plaintiff advised that she had a warrant currently out for her arrest.

v. After briefly questioning Plaintiff, he ran Plaintiff's name through a warrant search and discovered Plaintiff had a municipal warrant for her arrest.

vi. Holtzclaw also searched Plaintiff's purse for any drugs, finding none.

vii. Holtzclaw then allowed Plaintiff and her two companions to continue walking and left the scene.

viii. A short time later, Holtzclaw returned to the same neighborhood and upon discovering Plaintiff walking on her own, unlawfully stopped and questioned Plaintiff, asserting that she was not who she claimed to be from their previous encounter.

ix. Plaintiff advised Holtzclaw that she was very close to her mother's house, where she was staying for the night.

x. Holtzclaw then unlawfully placed Plaintiff in the squad car and drove Plaintiff to her mother's house, at or near the intersection of NW 14th Street and Blackwelder.

xi. Upon arriving at Plaintiff's mother's house, Plaintiff was allowed to exit the squad car whereby Holtzclaw followed Plaintiff up to an enclosed porch at the door to Plaintiff's mother's house.

xii. Holtzclaw unlawfully continued to question Plaintiff regarding her identity or whether she had any drugs in her possession, despite Holtzclaw having already obtained information regarding Plaintiff's

8

identity and that he had previously searched Plaintiff's purse in their initial encounter.

    xiii.  Holtzclaw then began to perform an unlawful and illegal search of Plaintiff, patting Plaintiff down underneath her clothing and touching her breasts and vagina.

    xiv.  Holtzclaw then told Plaintiff that if she did not want to go to jail for her outsanding warrant, that she would have to bend over in front of him.

    xv.  Plaintiff was not free to leave the presence of Holtzclaw in the enclosed porch at that time.

    xvi.  Holtzclaw then sexually assaulted and raped Plaintiff and left the scene.

s.  On June 18, 2014, Holtzclaw sexually assaulted Jannie Ligons.

    i.  Upon information and belief, victim Jannie Ligons has a familial relationship with an OKC police officer and used said familial relationship to force Defendants to take the complaints against Holtzclaw seriously and arrest Holtzclaw.

    ii.  Upon information and belief, it was only after Jannie Ligon's complaint that Defendants audited Holtzclaw's readily available GPS, contact logs, computer access and dispatch calls and questioned Holtzclaw, resulting finally in his arrest and prosecution.

24.     By virtue of the credible complaints made by victims Campbell and Morris, and the investigation opened no later than May 8, 2014, the Defendants knew or had reason to know of the dangerous activities of Holtzclaw prior to the time of Holtzclaw's unlawful search, seizure, detention, physical and sexual assault of the Plaintiff.

25.     By showing deliberate indifference and displaying a pattern, practice and custom of ignoring the dangers posed by Holtzclaw after receiving information which would alert them to said dangers and by permitting Holtzclaw to remain an active police officer during that time, all Defendants named herein are responsible for the unlawful search, seizure, detention, physical and sexual assault Plaintiff suffered and are legally liable to Plaintiff for the damages and injuries she has suffered as a result.

26.     Had Defendants acted timely upon Campbell and Morris's complaints, gathered the abundant information available to them, including Holtzclaw's GPS, contact logs, computer access, and dispatch calls and other evidence, and submitted the same to the District Attorney for prosecution of Holtzclaw at the time of Holtzclaw's November 5, 2013 assault on Campbell and Holtzclaw's May 8, 2014 assault on Morris, Plaintiff's constitutional rights would have been protected.

**COUNT I:**
**FOURTH AND FOURTEENTH AMENDMENT UNLAWFUL SEARCH,**
**UNLAWFUL SEIZURE, DEPRIVATION OF LIBERTY, AND UNLAWFUL USE**
**OF FORCE**
**Defendant OKC**

27.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 26 of Plaintiff's Complaint as if fully set forth herein.

28.     Title 42 U.S.C. § 1983 provides that every person who under color of state law causes any citizen of the United States to be deprived of any right, privilege or immunity secured by the Constitution and laws shall be liable to that party in a civil action.

29.     Pursuant to the Fourth and Fourteenth Amendments to the United States Constitution, Plaintiff has a right to be free from unreasonable searches and seizures and has a right to due process protections which include a right to bodily integrity and privacy.

30.     OKC, acting under color of state law, and according to policies, practices, and customs of OKC, acted in a manner that was deliberately indifferent to the danger posed by Holtzclaw, which led to the deprivation of Plaintiff's rights secured by the common law, the laws of the State of Oklahoma, and/or the laws and Constitution of the United States of America.

31.     By leaving Holtzclaw as an active police officer, OKC was deliberately indifferent and created the danger and directly participated in Plaintiff's constitutional deprivation in that:

   a. OKC failed to properly investigate incidents of police abuse of power, and/or intentionally disregarded evidence showing a police officer had abused his power;

   b. OKC failed to properly supervise, direct and control its officers to ensure they did not abuse their power;

   c. OKC failed to investigate incidents of racial profiling against African-American females and/or intentionally disregarded evidence showing that a

11

police officer had racially profiled or otherwise targeted African-American females;

d.  OKC failed to properly supervise, direct or control its officers to ensure they did not racially profile African-American females;

e.  OKC failed to promulgate and implement policies and train officers regarding receiving, investigating and reporting complaints of sexual assault by OKC officers;

f.  OKC failed to properly investigate incidents of sexual assault against women and/or intentionally disregarded evidence showing a police officer had sexually assaulted an African-American woman;

g.  OKC failed to properly discipline officers who commit sexual assaults against African-American women;

h.  OKC failed to properly supervise, direct or control its officers to ensure they did not sexually assault women;

i.  OKC as a matter of custom and practice, has with deliberate indifference failed to monitor, observe, supervise, investigate and control its police officers concerning the rights of its citizens, including Plaintiff;

j.  Upon information and belief, the deliberately indifferent acts and omissions of OKC were the result of decisions, statements or actions of Defendant Citty, who was the policy-making official of OKC at the times relevant to Plaintiff's claims herein;

32.     The acts, omissions, customs and policies of OKC were the driving force behind Holtzclaw's unlawful search, seizure, detention, physical and sexual assault of Plaintiff.

### COUNT II: FOURTH AND FOURTEENTH AMENDMENT UNLAWFUL SEARCH, UNLAWFUL SEIZURE, DEPRIVATION OF LIBERTY, AND UNLAWFUL USE OF FORCE
### As to Defendants Holtzclaw and Citty

33.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 32 of Plaintiff's Complaint as if fully set forth herein.

34.     Holtzclaw had no reasonable suspicion to stop and question Plaintiff for a second time, nor did Holtzclaw have probable cause to detain or otherwise prevent Plaintiff from the leaving the enclosed porch of her mother's house on the evening of June 17, 2014.

35.     Holtzclaw's required Plaintiff to remain in his presence while he conducted an unlawful search on Plaintiff's person, without probable cause and during which time Plaintiff did not reasonably believe she was free to leave which constitutes a detention and unlawful seizure of Plaintiff.

36.     Holtzclaw used unlawful force by physically assaulting, sexually assaulting and raping Plaintiff while she was detained or otherwise not free to leave the presence of Holtzclaw.

37.     Holtzclaw deprived Plaintiff of her liberty and right to bodily integrity by physically assaulting, sexually assaulting and raping her.

38.   All of the actions of Defendant Holtzclaw were done under the color of state law and by misuse of the power and authority granted to him as an Oklahoma City police officer.

39.   Defendant Citty is responsible for the training, firing, promoting, supervision and disciplining of OKC police officers.

40.   Holtzclaw's physical and sexual assault of Plaintiff constitutes an unlawful use of force which was not objectively reasonable in light of the facts and circumstances confronting Holtzclaw.

41.   Holtzclaw's physical and sexual assault of Plaintiff is conduct which shocks the conscience.

42.   Defendant Citty is responsible for the policy and/or custom of the OKC police department which allowed Holtzclaw to remain on active duty and to physically and sexually assault Plaintiff despite two prior credible complaints of sexual assault and an open investigation of sexual assault complaints against Holtzclaw.

43.   The actions taken by Holtzclaw as herein described exhibited a deliberate indifference to the constitutionally-protected rights of Plaintiff on the part of Defendants Holtzclaw and Citty, as said actions were taken under color of law and pursuant to the authority granted to Citty as the OKC Police Chief and to Holtzclaw as an OKC police officer.

44.   As a direct and proximate result of the above-described unlawful actions, Plaintiff was deprived of her right to be free from unlawful searches, seizures, use of force

and to have her bodily integrity protected under the Fourth and Fourteenth Amendments under the United States Constitution.

### COUNT III: CONSPIRACY TO INTERFERE WITH FOURTH AND FOURTEENTH AMENDMENT RIGHTS
**All Defendants**

45.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 44 of Plaintiff's Complaint as if fully set forth herein.

46.     Title U.S.C. § 1985(3) prohibits persons from conspiring to deprive, directly or indirectly, any person the equal protection of the laws of the United States.

47.     The conspiracy alleged herein occurred between November 5, 2013 and June 18, 2014 among Defendants OKC, Citty, Bennett, and Gregory.

48.     Said conspiracy involved Defendants' meeting and conspiring to ignore and fail to properly investigate the complaint of Demetria Campbell that she was sexually assaulted by Defendant Holtzclaw on or about November 5, 2013.

49.     Defendants failed and/or refused to investigate or otherwise pursue Demetria Campbell's complaint, other than Defendant Bennett apologizing for Holtzclaw's behavior.

50.     Said conspiracy further involved Defendants' meeting and conspiring to ignore and fail to properly investigate the complaint of Terri Morris that she was sexually assaulted by Defendant Holtzclaw on or about May 8, 2014.

51.     Defendants failed and/or refused to investigate or otherwise pursue Terri Morris' complaint against Defendant Holtzclaw.

52.     Defendants only removed Holtzclaw from active police duty and conducted an appropriate investigation of Holtzclaw's fourteenth victim Jannie Ligons made the third official complaint of being sexually assaulted by Holtzclaw on June 18, 2014.

53.     Defendants deliberately failed to conduct an investigation into Demetria Campbell and Terri Morris' complaints and deliberately failed to remove Holtzclaw from active police duty despite a pending investigation prior to the sexual assault of Plaintiff as a part of an agreed conspiracy to deprive these victims and Plaintiff of her constitutionally protected rights.

54.     Such deliberate conduct was motivated by and represents invidious discriminatory animus against African-American women, such that their right to freedom from unreasonable searches and seizures, the right to freedom from the unlawful use of force, and the right to bodily integrity and integrity does not matter and need not be recognized, investigated or prosecuted, particularly when the victimizer is a white member of the OKC police department.

55.     Such deliberate conduct by Defendants deprived Plaintiff of equal protection under the law.

56.     Prior to Holtzclaw's criminal prosecution, there was a meeting of the minds, conspiracy and agreement among Defendants Citty, Bennett and Gregory to cover-up rather than report and present to the District Attorney evidence of sexual assaults being committed by Holtzclaw against African-American women. As a direct and proximate result of this conspiracy, Holtzclaw was allowed to sexually assault Plaintiff, Holtzclaw's twelfth (12th) victim.

16

## COUNT IV: FOURTH AND FOURTEENTH AMENDMENT FAILURE TO SUPERVISE
### All Defendants

57.    Plaintiff hereby adopts and incorporates by reference the allegations contained paragraphs 1 through 56 of Plaintiff's Complaint as if fully set forth herein.

58.    Defendants knew that Holtzclaw had, prior to physically and sexually assaulting Plaintiff, committed at least two (2) acts of unlawful force and sexual assault against an African-American female, as described above.

59.    Alternatively, Defendants should have known of the multiple instances of unconstitutional searches, seizures, use of excessive force and sexual assault committed by Holtzclaw by simply utilizing the multitude of monitoring tools at the Defendants' disposal.

60.    Had these resources which included but were not limited to Holtzclaw's readily available GPS, contact logs, warrant and name database searches and radio call-in records, been utilized, Defendants would have been aware of Holtzclaw's unlawful on-duty whereabouts and activities.

61.    Holtzclaw's GPS, contact logs, warrant database searches, and radio call-in records were readily available to be reviewed by Holtzclaw's supervisors. It was the review of these records by Detective Kim Davis and other OKC officers that helped lead to the eventual arrest and prosecution of Defendant Holtzclaw.

62.    Despite prior reports that Holtzclaw committed unlawful acts of violence against African-American females, Defendants, as Holtzclaw's supervisors, deliberately allowed Defendant Holtzclaw to patrol the predominately African-American

17

neighborhoods of Northeast Oklahoma City, alone, without supervision, during the sparsely populated overnight hours and failed to supervise and monitor his activities.

63.     By deliberately ignoring Holtzclaw's prior unconstitutional behavior, Defendants set into motion a series of events that they knew or should have known would directly cause Holtzclaw to deprive Plaintiff of her constitutional rights.

64.     The failure on the part of Defendants to supervise Holtzclaw demonstrated that they were deliberately indifferent to the rights of Plaintiff and represents a pattern, practice and custom of disregarding complaints of sexual assault against OKC police officers submitted by African-American women. Specifically the custom of Defendants to not supervise OKC police officers with outstanding complaints of sexual assault and a pending investigation of sexual assault while on duty was the driving force behind the deprivation of Plaintiff's constitutional rights.

65.      As a direct and proximate result of the above-described unlawful actions, Plaintiff suffered a prohibited deprivation of liberty in that her person was unlawfully searched, seized, detained, physically and sexually assaulted in violation of the Fourth and Fourteenth Amendments to the United States Constitution.

66.     Consequently, Plaintiff is entitled to damages and other relief as set forth herein.

## COUNT V: FOURTH AND FOURTEENTH AMENDMENT MUNICIPAL LIABILITY-FAILURE TO TRAIN
### Defendants OKC and Citty

67.     Plaintiff hereby adopts and incorporates by reference the allegations contained in paragraphs 1 through 66 of Plaintiff's Complaint as if fully set forth herein.

68.     The training policies of OKC were non-existent and/or inadequate to train its officers to handle and respond to receiving and investigating complaints of sexual assault by fellow OKC police officers, particularly those submitted by African-American women with prior involvement in the criminal justice system.

69.     The training policies of OKC were non-existent and/or inadequate to train its officers to discipline OKC police officers for sexual assaults upon OKC residents or to prosecute OKC police officers for sexual assaults upon OKC residents.

70.     Defendant OKC was deliberately indifferent to the need and obvious consequences of its failure to train its officers regarding the investigation and prosecution of claims of sexual assault by OKC police officers against OKC residents.

71.     Defendant OKC's failure to properly train it's officer regarding police officer sexual assault is so closely related to the deprivation of Plaintiff's constitutional right to be free from unlawful searches, seizures, unlawful use of force and her right to bodily integrity that it is the driving force behind said constitutional deprivations.

72.     By reason of the aforementioned acts and omissions, Plaintiff has suffered devastating mental, emotional, physical and financial damages, accordingly, Defendants each are liable to Plaintiff for damages and other relief as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Court will enter judgment in her favor for all her claims herein and will grant Plaintiff the following:

1.     All actual damages suffered by Plaintiff, including physical pain, past and future mental distress, and emotional distress in excess of seventy-five thousand dollars ($75,000.00) as a result of the deprivation of her constitutional rights.

2.     Punitive damages to the extent permitted by law.

3.     Injunctive relief requiring Defendant OKC to implement policies and procedures to prevent such deprivations of constitutional rights in the future, including an investigative unit specifically established to receive, investigate, and report allegations of sexual assault by OKC officers directly to the District Attorney.

4.     Injunctive relief requiring Defendant OKC to equip all of its officers with body cameras that are unable to be tampered with or shut off by the officer wearing such camera.

5.     An award of attorney's fees pursuant to 42 U.S.C. § 1988(b) and any other applicable provision of law.

6.     Any and all further relief this Honorable Court deems just and equitable.

Respectfully submitted,

**BASS LAW, P.C.**

JURY TRIAL DEMANDED!            S/ Colin R. Barrett
ATTORNEY LIEN CLAIMED!          Kirk Olson, OBA #14571
                                Colin R. Barrett, OBA #31936
                                Rachel Smith, OBA #32121
                                BASS LAW
                                201 Robert S. Kerr, Suite 700
                                Oklahoma City, OK  73102
                                OFFICE: (405) 262-4040
                                FAX: (405) 262-4058
                                kirk@basslaw.net
                                colin@basslaw.net
                                rachel@basslaw.net

                                and

                                Jim Dowell, OBA #19447
                                Jim D. Dowell, P.C.
                                2315 Downs Avenue, Suite 220
                                Woodward, OK 73801
                                Office: (580) 254-0081
                                Fax: (580) 254-0126
                                jdowell@dowelllaw.net

                                *ATTORNEYS FOR PLAINTIFF*